**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joseph Tarantino, | No. CV-09-00606-TUC-FRZ |
| Plaintiff, | **ORDER** |
| vs. | |
| Pima County Sheriff Clarence Dupnik; Deputy L.J. Summerfield; Deputy B.P. Kunze; and Sergeant G. Bargar; | |
| Defendants. | |

On September 29, 2008, Joseph Tarantino, a homeless man, was bitten by a Pima County Sheriff's Department K-9 police dog while he slept in the desert just west of Interstate 10 in Tucson. Tarantino suffered injuries to his arm and foot. One year later, he filed suit in state court against Pima County Sheriff Clarence Dupnik, Deputies Larry Summerfield and Brian Kunze, and Sergeant Greg Bargar. *See Tarantino v. Dupnik*, No. C20097445 (Ariz. Super. Ct. Sept. 25, 2009). The complaint asserts state law negligence claims and federal claims for violation of civil rights under 42 U.S.C. § 1983. Doc. 1-4. The action was removed to this Court based on the federal civil rights claims. Doc. 1; *see* 28 U.S.C. § 1343(a)(3).

Defendants have filed a motion for summary judgment. Doc. 29. The motion is fully briefed. Docs. 30, 33. Oral argument has not been requested. For reasons stated below, summary judgment will be granted in part and the case remanded to state court.

## I. Summary Judgment Standard.

A principle purpose of summary judgment is to dispose of factually or legally unsupported claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a mater of law." Fed. R. Civ. P. 56(a). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II. Sheriff Dupnik, Pima County Sheriff's Department, and Pima County.

Plaintiff asserts a negligence claim against Sheriff Dupnik in count two of the complaint, and a § 1983 claim against him in count four. Doc. 1-4 ¶¶ 38-42, 47-52. Although not named as defendants in the complaint's caption, the Pima County Sheriff's Department and Pima County are alleged to be vicariously liable to the extent the Sheriff was acting in his official capacity. *Id.* ¶¶ 42, 52. For reasons that follow, summary judgment will be granted on counts two and four.

Plaintiff fails to address the summary judgment arguments concerning counts two and four. *See* Doc. 29. Shortly after filing his response brief (Doc. 30), Plaintiff provided notice of Sheriff Dupnik's dismissal (Doc. 32). Given that dismissal, and because liability on the part of the Sheriff's Department and the County arises solely from the Sheriff's alleged misconduct, summary judgment will be granted on counts two and four to the extent those claims are asserted against the Sheriff's Department and the County.[1]

---

[1] It is worth noting that the Sheriff's Department, as a non-jural entity, is without the capacity to sue or be sued. *See Braillard v. Maricopa County*, 232 P.3d 1263, 1269 (Ariz. Ct. App. 2010); *Orrell v. Maricopa County*, No. CV 11-01492-PHX-NVW, 2012 WL 1158642, at *1 (D. Ariz. Apr. 6, 2012).

1  **III.   Deputy Kunze and Sergeant Bargar.**

2  In count three, Plaintiff asserts a § 1983 civil rights claim against Deputies 3 Summerfield and Kunze and Sergeant Bargar. Doc. 1-4 ¶¶ 43-46. To prevail on a claim 4 brought under § 1983, the plaintiff must show that he was "deprived of a right secured by the 5 Constitution or laws of the United States, and that the alleged deprivation was committed 6 under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). 7 The complaint, among other things, alleges that Defendants intentionally, or with deliberate 8 indifference to Plaintiff's well-being, released the K-9 dog upon Plaintiff thereby depriving 9 him of his Fourth Amendment right to be free from unreasonable seizure. *Id.* ¶ 44.

10 Kunze and Bargar are entitled to summary judgment on count three, Defendants 11 argue, because they had no personal involvement in the alleged deprivation of a 12 constitutional right. Doc. 29 at 9. The Court agrees.

13 "Individual liability under § 1983 'arises only upon a showing of personal 14 participation by the defendant.'" *Cota v. Arizona*, No. CV-10-1024-PHX-GMS, 2010 WL 15 4682488, at *4 (D. Ariz. Nov. 10, 2010) (quoting *Taylor v. List*, 880 F.2d 1040, 1045 (9th 16 Cir. 1989)). Put another way, "'the inquiry into causation must be individualized and focus 17 on the duties and responsibilities of each individual defendant whose acts or omissions are 18 alleged to have caused a constitutional deprivation.'" *See Jernigan v. Richard*, --- F. Supp. 19 2d ----, 2012 WL 79262, at *8 (D. Ariz. Jan. 12, 2012) (quoting *Leer v. Murphy*, 844 F.2d 20 628, 634 (9th Cir. 1988)).

21 It is undisputed that Deputy Summerfield was in charge of the K-9 dog that bit 22 Plaintiff – that is, he was the dog's sole handler and the one who released the dog and called 23 off the dog after the bite. Docs. 28 ¶ 2, 31 ¶¶ 18-19, 25, 28. Deputy Kunze and Sergeant 24 Bargar served as cover officers for Deputy Summerfield and otherwise assisted in the search 25 for the felony suspect who had fled into the desert (Doc. 28 ¶¶ 3, 5), but Plaintiff presents no 26 evidence showing that Kunze and Bargar's actions, or their failure to act, caused the dog to 27 bite him. Significantly, Plaintiff has presented no evidence that the dog would have 28 responded to anyone other than his handler, Deputy Summerfield, or that Plaintiff would

have heard warnings given by deputies other than Summerfield.

In short, there is no triable issue as to whether Deputy Kunze and Sergeant Bargar personally caused the alleged unreasonable seizure. The Court will grant summary judgment in their favor on the § 1983 claim asserted in count three. *See Brown v. County of Kern*, No. 1:06-CV-00121-OWW-TAG, 2008 WL 544565, at *7 (E.D. Cal. Feb. 26, 2008) (granting summary judgment on § 1983 claim against non-handler officers because "K-9s only answer to their handlers"); *Neeley v. Samis*, 183 F. Supp. 2d 672, 682 (D. Del. 2002) (granting summary judgment where no evidence showed that the defendant "issued any commands to the police dog or controlled the dog in any way").

## IV. Deputy Summerfield.

Plaintiff asserts a negligence claim against Deputy Summerfield in count one of the complaint, and a § 1983 claim against him in count three. Doc. 1-4 ¶¶ 30-37, 43-46. As explained more fully below, the Court will grant summary judgment on the § 1983 claim and remand the remaining negligence claim to state court.

### A. The Federal Civil Rights Claim Under § 1983.

Deputy Summerfield seeks summary judgment on the § 1983 claim on the grounds that Plaintiff has suffered no constitutional injury and the claim otherwise is barred by the doctrine of qualified immunity. Doc. 29 at 5-11. With respect to the first argument, Plaintiff contends that he has suffered a deprivation of a Fourth Amendment right because the release of the K-9 dog was unreasonable and caused him to be seized with excessive force. Doc. 30 at 6-11. Plaintiff further contends that Deputy Summerfield is not entitled to the protection of qualified immunity because he was aware that such a seizure would violate the Fourth Amendment. *Id.* at 11-13.

#### 1. Constitutional Injury.

Fourth Amendment excessive force claims are analyzed under the framework outlined by the Supreme Court in *Graham v. Connor*, 490 U.S. 386 (1989). That analysis "requires balancing the 'nature and quality of the intrusion' on a person's liberty with the 'countervailing governmental interests at stake' to determine whether the use of force was

1  objectively reasonable under the circumstances." *Smith v. City of Hemet*, 394 F.3d 689,
2  701 (9th Cir. 2005) (quoting *Graham*, 490 U.S. at 396). Factors to be considered in the
3  Fourth Amendment reasonableness inquiry include "'(1) the severity of the crime at issue,
4  (2) whether the suspect poses an immediate threat to safety of the officers or others, and
5  (3) whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.*

6        Applying the *Graham* analysis, the Court first assesses "the gravity of the particular
7  intrusion on Fourth Amendment interests by evaluating the type and amount of force
8  inflicted." *Miller v. Clark County*, 340 F.3d 959, 964 (9th Cir. 2003). Deputy Summerfield
9  claims that the K-9 dog only bit Plaintiff "for a matter of seconds" before being called off
10 and releasing its grip. Doc. 28 ¶¶ 29-30. Plaintiff has testified that on the night of the
11 incident, he awoke to an animal sinking its teeth into his arm and pulling him from the shed
12 where he slept. Plaintiff believed he was being attacked by a wild animal, perhaps a coyote.
13 His arm was badly hurt, resulting in a two-week hospital stay. Doc. 31-1 ¶¶ 19-22. When
14 that testimony is accepted as true, as is required on summary judgment, it is clear that
15 "the intrusion on [Plaintiff's] Fourth Amendment interests was a serious one." *Rodriguez*
16 *v. Tushnet*, No. 1:11-CV-01371-LJO-DLB, 2012 WL 996552, at *5 (E.D. Cal. Mar. 23,
17 2012) (the use of force was considerable where the dog bit and held onto the plaintiff's leg
18 for the amount of time it took the officer to leave his position of cover and call off the dog);
19 *see Miller*, 340 F.3d at 964 (finding intrusion to be serious where the length of the bite and
20 hold "might cause a suspect pain and bodily injury").

21       This finding, however, does not end the Fourth Amendment reasonableness inquiry.
22 The Court must weigh the serious intrusion on Plaintiff's liberty against the "the importance
23 and legitimacy of the government's countervailing interests, mindful of the three factors the
24 Supreme Court identified in *Graham* as pertinent to this inquiry[.]" *Miller*, 340 F.3d at 964.

25       The first of those factors is the severity of the crime being investigated. *Graham*, 490
26 U.S. at 396. Defendants have presented undisputed evidence showing that before starting
27 the search which led to Plaintiff's seizure, Deputy Summerfield and the other officers knew
28 that the felony suspect they were searching for had just caused a hit-and-run accident while

1 driving a stolen vehicle, had crashed that vehicle a little farther down the highway, and had
2 fled into the desert. Doc. 28 ¶ 6. "The government has an undeniable legitimate interest in
3 apprehending criminal suspects, and that interest is even stronger when the criminal is . . .
4 suspected of a felony, which is by definition a crime deemed serious by the state." *Miller*,
5 340 F.3d at 964 (citing *United States v. Hensley*, 469 U.S. 221, 229 (1985)). This factor
6 strongly favors Deputy Summerfield. *See id.*; *Rodriguez*, 2012 WL 996552, at \*5.

7 Second, the Court considers whether the suspect posed a threat to the safety of the
8 officers or others, which this Circuit recognizes as the most important of the three *Graham*
9 factors. *See Miller*, 340 F.3d at 964. From Deputy Summerfield's viewpoint, the suspect
10 clearly posed a safety threat. Summerfield knew that the suspect already had shown a
11 complete disregard for public safety by having caused a hit-and-run accident and then
12 crashing his stolen vehicle on the highway. Doc. 28 ¶ 6. In addition, the desert area where
13 the officers believed the suspect had fled was dark and the suspect had ample time to find
14 cover and gain a position of strategic advantage over the officers. *Id.* ¶¶ 11-16. The suspect
15 might have been armed, and Summerfield had reason to believe that the suspect remained
16 defiant as there was no response to the multiple warnings that a police dog would be released.
17 *Id.* ¶¶ 20-21. Under these "objectively menacing circumstances," Deputy Summerfield was
18 entitled to assume that the suspect posed an immediate threat to his own safety and to that
19 of others. *Miller*, 340 F.3d at 965. This second *Graham* factor weighs heavily in
20 Summerfield's favor. *See id.*; *Rodriguez*, 2012 WL 996552, at \*5 (suspect posed an
21 immediate safety threat where he led officers on a high-speed chase, had not been searched
22 for weapons, and had an opportunity to gain a tactical advantage over the officers).

23 The third *Graham* factor concerning countervailing governmental interests is whether
24 the suspect was actively resisting arrest or attempting to evade by flight. 490 U.S. at 396.
25 The suspect Deputy Summerfield was pursuing clearly had evaded arrest by flight – he had
26 abandoned the stolen vehicle and fled on foot into the darkness and cover of the desert. Doc.
27 28 ¶ 6. This factor favors Summerfield. *See Miller*, 340 F.3d at 965-66; *Rodriguez*, 2012
28 WL 996552, at \*6.

While all three *Graham* factors favor Deputy Summerfield, the Court ultimately must decide whether the force deployed was reasonably necessary under the circumstances. Summerfield attempted less forceful means of apprehension. He scouted the desert area on foot with a flashlight, had a police helicopter search the scene, made announcements that a police dog would be released unless the suspect responded, and waited for a response before releasing the dog. Doc. 28 ¶¶ 12-20; *see Miller*, 340 F.3d at 966; *Rodriguez*, 2012 WL 996552, at *6. It is important to note that Summerfield sought to minimize harm by immediately calling off the dog upon realizing that it may have found a homeless person's campsite. Doc. 28 ¶ 28; *see Miller*, 340 F.3d at 967 n.12. The Court concludes that Summerfield's release of his K-9 partner was a reasonably necessary use of force.

The release of the dog was unreasonable, Plaintiff contends, because of the "very high probability" that the dog would bite and injure an innocent person. Doc. 30 at 9. The reasonableness of the force deployed is to be evaluated from the perspective of Deputy Summerfield – that is, his "'contemporaneous knowledge of the facts.'" *Miller*, 340 F.3d at 965 & n.9 (citation omitted). Plaintiff notes that the desert area where he camped is near services for the homeless and other people camped there as well (Doc. 31 ¶¶ 7-14), but presents no evidence that Summerfield had knowledge of those facts. The fact that Summerfield was aware generally that transient camps were "all over the place" in Tucson (*id.* ¶ 24) does not show that knew a homeless person likely would be sleeping in the desert area where the suspect had fled. Moreover, Summerfield has provided uncontroverted testimony that before releasing the dog, he had no reason to believe that anyone other than the suspect would be found in the area being searched. Doc. 28 ¶ 25.

Plaintiff further contends that the warnings given were not objectively reasonable. Doc. 30 at 10. It is undisputed that Deputy Summerfield shouted three loud warnings – two in English and one in Spanish. Doc. 28 ¶ 20. The warnings were inadequate, Plaintiff asserts, because they were shouted "into the wind in a desert area bordered by a freeway, past midnight[.]" Doc. 30 at 10. There is no evidence suggesting that freeway noise interfered with the warnings, and Summerfield has testified that the wind was only a "light breeze."

Doc. 31-2 at 4. While use of a loudspeaker may have been more effective in warning Plaintiff, any failure to use one on the part of Deputy Summerfield cannot be deemed objectively unreasonable given his multiple shouted warnings and his reasonable belief that the suspect would be the only person found in the desert area being searched.

Where a Fourth Amendment claim of unreasonable seizure is being analyzed, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. Even when construing the evidence in the light most favorable to Plaintiff, the Court finds, under the totality of the circumstances, that the government's strong interests in apprehending the felony suspect outweighed Plaintiff's legitimate interest in not being bitten by a dog. Thus, notwithstanding the serious injuries Plaintiff suffered, Deputy Summerfield's use of the K-9 dog was objectively reasonable and therefore did not deprive Plaintiff of his Fourth Amendment right to be free from unreasonable seizure. *See Miller*, 340 F.3d at 968; *Rodriguez*, 2012 WL 996552, at \*6.

### 2.     Qualified Immunity.

Even if there were a triable issue as to whether Plaintiff suffered a constitutional injury, summary judgment on the § 1983 claim would still be appropriate on the basis of qualified immunity. Under that doctrine, a law enforcement officer is protected from suit for civil damages where his conduct does not violate a clearly established constitutional right of which a reasonable officer would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Deputy Summerfield argues, correctly, that Plaintiff has failed to show that a reasonable officer would have known that the use of a police dog in the situation Summerfield confronted clearly would be unconstitutional. Doc. 29 at 9-10. Plaintiff cites case law for the proposition that the release of a police dog requires a warning (Doc. 30 at 12), but the undisputed evidence shows that Deputy Summerfield gave multiple shouted

warnings before releasing his K-9 partner (Doc. 28 ¶ 20). While those warnings did not wake Plaintiff from his intoxicated slumber (*see* Doc. 28 ¶¶ 37-38), they were not so deficient as to put a reasonable officer on notice that the subsequent release of a police dog would violate the constitutional rights of a suspect or an innocent bystander.

"Qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Jernigan v. Richard*, --- F. Supp. 2d ----, 2012 WL 79262, at *32 (D. Ariz. Jan. 12, 2012) (citation omitted). Under the circumstances presented to him, the use of a K-9 dog by Deputy Summerfield was not a plainly incompetent or otherwise unreasonable decision. It is worth noting, particularly with respect to the shouted warnings, that mere negligence on the part of the Summerfield is not sufficient for liability to attach under § 1983. *See id.* at *12.

In summary, the undisputed evidence, even when construed in Plaintiff's favor, shows that he suffered no deprivation of a constitutional right and qualified immunity otherwise bars the § 1983 claim. The Court will grant summary judgment on count three in favor of Deputy Summerfield.

**B.     The State Law Negligence Claim.**

With the elimination of the federal claims asserted in counts three and four of the complaint (Doc. 1-4 ¶¶ 43-52), the basis for this Court's jurisdiction no longer exists (*see* Doc. 1 ¶ 3). Under the relevant statute, 28 U.S.C. § 1367(c)(3), the Court may decline to exercise supplemental jurisdiction over the remaining state law negligence claim asserted in count one. Doc. 1-4 ¶¶ 30-37. "The Supreme Court has instructed that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Thompson v. SunTrust Mortg., Inc.*, No. CV11-0284-PHX-DGC, 2011 WL 3320774, at *6 (D. Ariz. Aug. 2, 2011) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). This is true given that "[p]rimary responsibility for developing and applying state law rests with the state courts." *Gangstee v. County of Sacramento*, No. S-10-1004 KJM GGH, 2012 WL 112650, at *8 (E.D. Cal. Jan. 12, 2012).

Although this case is more than two years old, the Court concludes that it should be remanded to state court. Only a state law negligence claim remains, and Arizona state courts have a greater interest and expertise in resolving state law claims and applying state court decisions. Moreover, remand will benefit the federal system by allowing this Court to devote its scarce resources to resolving federal issues. *See Thompson*, 2011 WL 3320774, at *6; *Gangstee*, 2012 WL 112650, at *8 (remanding state law claims arising from the use of a police dog where the federal claims were dismissed more than two years after the suit was brought but before trial).

Because the Court is remanding the case to state court, it will not address the summary judgment arguments concerning the negligence claim asserted in count one, but instead will leave those arguments to be decided by the state court.

**V.     Conclusion.**

The claims asserted against Sheriff Dupnik have been dismissed. Doc. 32. Summary judgment will be granted on the claims asserted against the Pima County Sheriff's Department and Pima County (counts two and four) and the federal civil rights claims asserted against Deputies Summerfield and Kunze and Sergeant Bargar (count three). The remaining negligence claim asserted against Deputy Summerfield (count one) is to be resolved in state court upon remand.

**IT IS ORDERED:**

1.     Defendants' motion for summary judgment (Doc. 29) is **granted in part** as set forth in this order.

2.     The case is **remanded** to the Arizona Superior Court in Pima County.

DATED this 14th day of May, 2012.

_____
Frank R. Zapata
Senior United States District Judge

- 10 -